IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CT-3027-H

CYNTHIA RENEE OLIVER,      )
                          )
        Plaintiff,        )
                          )
                          )
    v.                    )
                          )
                          )      **ORDER**
DEAN MILTON HARPER, et al. )
                          )
        Defendants.       )
                          )
                          )
                          )

Plaintiff Cynthia Renee Oliver ("plaintiff"), a state inmate, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of her constitutional rights.    Plaintiff also alleges negligent infliction of emotional distress, assault and battery, willful and wanton negligence, and various state statutory violations.  Before the court is a motion for summary judgment by defendants Johnny Williams ("defendant Williams"), sued individually and in his official capacity as Sheriff of Warren County; Dean Milton Harper ("defendant Harper"), sued individually and in his official capacity as a Warren County detention officer; Western Surety Company ("defendant Western Surety"), a surety for defendant Williams; and Warren County, North Carolina ("defendant Warren County"); (collectively referred to as "defendants").  Defendants assert that the motion for summary judgment on claims against

defendant Harper are for the official capacity claims only. Defendant Harper is being represented separately on his individual capacity claims. Plaintiff responded to the motion for summary judgment filed by defendants. This matter is ripe for adjudication.

## STATEMENT OF THE CASE

Plaintiff originally filed this action on March 14, 2008, in the Superior Court of Warren County, North Carolina. On January 6, 2009, plaintiff filed a voluntary dismissal without prejudice and refiled her complaint later that day. On February 5, 2009, defendants removed plaintiff's action to federal court based on plaintiff's § 1983 allegations and filed an answer on February 10, 2009.

This court conducted a frivolity review on February 17, 2009, and determined that plaintiff's claims were not clearly frivolous. The time period to complete discovery expired on December 18, 2009. Defendants filed a motion for summary judgment (DE # 26) on January 19, 2010. Plaintiff filed a response (DE # 29) and a motion to seal exhibit eight (DE # 31) on February 8, 2010. Defendants filed a reply (DE # 33) to plaintiff's response on February 22, 2010. On July 21, 2010, this court entered an order denying plaintiff's motion to seal exhibit eight but allowing plaintiff to submit exhibit eight with redactions of personally sensitive information. Plaintiff filed the redacted document on July 29, 2010.

2

## STATEMENT OF THE FACTS

As viewed in the light most favorable to plaintiff, plaintiff's claims arise from a sexual assault by defendant Harper, a former Warren County detention officer, that occurred while she was incarcerated at Warren County jail on January 8, 2006. Defendant Harper admitted to having sexual intercourse with the plaintiff and pleaded guilty to Sexual Activity by a Custodian in violation of N.C. Gen. Stat. § 14-22.7(A) in the Superior Court of Warren County, North Carolina.

Plaintiff claims that between 3:00 a.m. and 4:00 a.m. on January 8, 2006, defendant Harper covered the security camera located in the hallway leading to the female section of the jail and entered plaintiff's cell after lockdown. He covered her mouth and had sexual intercourse with plaintiff without her consent. After the shift rotation of officers, plaintiff reported the incident to officer Sherry Davis, who called her shift sergeant, Willie Bullock. Bullock then called Lieutenant Deborah Hargrove and Litonya Carter, the Warren County Detention Center Administrator, who arrived at the jail and interviewed plaintiff. After speaking with plaintiff and reviewing the female corridor camera, Ms. Carter contacted defendant Williams to inform him of the situation.

Defendant Williams arrived at the Detention Center with Warren County Detective John Branche and met with Ms. Carter. After

3

plaintiff met with Mr. Branche, she went with Branche and Carter to the Maria Parham Hospital for a rape-kit examination. Plaintiff was then escorted back to the jail where she was placed in administrative segregation.

Regarding the internal investigation by the Sheriff's Department, defendants claim that pursuant to defendant Williams' instruction, the department began an immediate internal investigation into the incident. Defendant Harper was immediately placed on administrative leave and was not allowed to return to his shift. The other officers on duty during the time of the incident were Officer Margaret Brandt and Officer Edward Harrington. During Brandt's and Harrington's interviews, the officers stated that they had no knowledge of defendant Harper entering the female housing area but each admitted to having napped while on duty. It is not known whether the naps occurred during the time of the incident. Officer Harrington further stated that, customary to the nightly practice, he left at 4:00 a.m. to retrieve breakfast for the inmates from the state prison in Nash County, and was gone for approximately one hour.

According to defendants, on January 8, 2006, defendant Williams contacted the State Bureau of Investigation ("SBI") to request an investigation into plaintiff's allegations. SBI Agents Brian Fleming and Greg Tart conducted the investigation, which included interviewing plaintiff, Officer Harrington, Officer

4

Brandt, defendant Harper, and another female inmate.

After concluding the investigation, the SBI charged defendant Harper with Sexual Activity by a Custodian in violation of N.C. Gen. Stat. § 14-27.7(A). Defendant Harper pleaded guilty and received a sentence of three years' probation and ten (10) days in jail. Defendant Harper resigned on January 10, 2006, and Officers Harrington and Brandt resigned soon thereafter.

DISCUSSION

## I.    Standard of Review

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-

5

moving party and draws all reasonable inferences in the non-movant's favor.  Matsushita Elec. Indus. Co., 475 U.S. at 587.

## II.  **Analysis**

### A.  Section 1983 Claims

#### 1)  Qualified Immunity

In support of the motion for summary judgment, defendant Williams asserts the defense of qualified immunity.  Government officials sued in their individual capacities are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001).  The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful.  Id.  In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. See Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009);[1] Siegert v. Gilley, 500 U.S. 226, 232 (1991); Rogers, 249 F.3d at 286.

Plaintiff has alleged individual capacity claims against defendant Williams and defendant Harper.  However, as indicated by

---

[1]In Pearson, the Supreme Court overruled the mandatory two-step sequence adopted in Saucier v. Katz, 533 U.S. 194 (2001).  See Pearson, 129 S. Ct. at 821.

6

defendants, defendants have moved for summary judgment as to defendant Harper's official capacity claims only. Therefore, the defense of qualified immunity is asserted by defendant Williams alone.

It is well settled that a supervisor may not be held liable under § 1983 under the doctrine of respondeat superior. <u>Vinnedge v. Gibbs</u>, 550 F.2d 926, 928 (4th Cir. 1977). However, a supervisor may be held liable in certain circumstances for constitutional injuries inflicted by his or her subordinates. To establish such liability, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

<u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994). To establish the first element, a plaintiff must show "that the supervisor had knowledge of conduct by the subordinate where the conduct posed a pervasive and unreasonable risk of constitutional injury to the plaintiff." <u>Id.</u> A pervasive and unreasonable risk of harm requires evidence that the "conduct is widespread, or at least has been used on several different occasions." <u>Id.</u> To establish the second element, plaintiff must show "continued inaction in the face of documented widespread abuses." <u>Slakan v. Porter</u>, 737 F.2d 368,

373 (4th Cir. 1984). The Fourth Circuit has held that "a showing of mere negligence will not meet" the "very high standard" of deliberate indifference. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Finally, to establish the liability of a supervisor, there must be an affirmative causal link between the inaction of the supervisor and the harm suffered by the plaintiff. Slakan, 737 F.2d at 376.

In this case, plaintiff alleges that defendant Williams is liable as defendant Harper's supervisor because defendant Williams knew or should have known of the persistent problem of night shift jailers sleeping on duty. Plaintiff states that there was a pattern and custom of officers sleeping on duty at Warren County jail which prevented them from noticing defendant Harper enter the female prisoner corridor. Plaintiff also alleges that a general state of disrepair contributed to the lack of safety for the inmates.

Despite these claims, plaintiff has not met the three-part test required to establish supervisor liability. Plaintiff has not presented sufficient evidence necessary to demonstrate deliberate indifference by defendant Williams. The evidence does not show that there were widespread documented abuses of napping by night shift jailers, nor does it show continued inaction by defendant Williams in addressing a problem of napping. Instead, the evidence presented by plaintiff reveals that a chair and blankets were

8

removed by jail administrator Carter from the control area in order to curb any on-duty sleeping and that a meeting was held to address the issue. Such action by the jail administrator does not demonstrate "continued inaction in the face of documented widespread abuses." Id. at 373. In addition, the evidence does not reveal that defendant Williams had knowledge of napping by jail officers.

Furthermore, plaintiff cannot show an affirmative causal link between inaction by defendant Williams and the harm suffered by plaintiff. In this case, an intentional sexual assault by defendant Harper was not a natural and foreseeable consequence of napping by officers Brandt and Harrington. The Fourth Circuit has stated that "a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." Randall v. Prince George's County, 302 F.3d 188, 206 (4th Cir. 2002) (citing Slakan, 737 F.2d at 373). Indeed, there was nothing in defendant Harper's record or employment history to suggest that he was likely to sexually assault an inmate.

Plaintiff claims that there had been at least one prior incident of a male guard entering the female section of the jail and making inappropriate sexual advances toward a female inmate. As pointed out by the defendants, however, this incident did not involve defendant Harper and there is no evidence that defendant

9

Williams did not respond appropriately to that incident. Furthermore, an isolated incident by one former employee does not approach the "widespread and permanent" practice required to establish a municipal custom or practice. <u>Carter v. Morris</u>, 164 F.3d 215, 220 (4th Cir. 1999) (citing <u>Greensboro Prof'l Fire Fighters Ass'n v. City of Greensboro</u>, 64 F.3d 962, 967 (4th Cir. 1995)). Accordingly, plaintiff is unable to establish supervisor liability or a constitutional violation by defendant Williams. Therefore, defendant Williams is entitled to qualified immunity for the § 1983 claim against him in his individual capacity, and his motion for summary judgment as to this claim is GRANTED.

> 2) Official Capacity § 1983 Claims and Liability of Defendant Warren County

Plaintiff's § 1983 claims against defendants Williams and Harper in their official capacities are treated as actions against the government entity of which they are agents.[2] <u>See Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); <u>Love-Lane v. Martin</u>, 355 F.3d 766, 783 (4th Cir. 2004) (finding that a claim brought against a government employee in his official capacity should be dismissed as duplicative of a claim against the government entity for which he

---

[2]The Fourth Circuit has held that a county is considered a municipal entity for purposes of § 1983. <u>Revene v. Charles County Commissioners</u>, 882 F.2d 870, 874 (4th Cir. 1989).

10

works). A local government entity cannot be held liable under §
1983 on a respondeat superior theory of liability. <u>Monell v. Dep't</u>
<u>of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978). Instead, to establish
liability of the government entity, a plaintiff must demonstrate
that (1) a government actor deprived the plaintiff of her federal
rights, and (2) the harm was the result of an official policy or
custom of the local entity. <u>Lytle v. Doyle</u>, 326 F.3d 463, 471 (4th
Cir. 2003). Plaintiff has presented sufficient evidence to support
a finding that defendant Harper violated plaintiff's constitutional
rights and the court, therefore, assumes so for purposes of the
motions presently before the court.[3] Therefore, the issue before
this court is whether there is sufficient evidence that the
constitutional violation was the result of an official policy or
custom of the Office of the Sheriff for Warren County.

The Fourth Circuit has held that there are four ways that a
local government entity may be held liable for a policy or custom:

> (1) through an express policy, such as a written
> ordinance or regulation; (2) through the decisions of a
> person with final policymaking authority; (3) through an
> omission, such as a failure to properly train officers,
> that "manifest[s] deliberate indifference through the
> rights of citizens"; or (4) through a practice that is so
> "persistent and widespread" as to constitute a "custom or
> usage with the force of law."

<u>Id.</u>, 326 F.3d at 471 (quoting <u>Carter</u>, 164 F.3d at 218). In this

---

[3]It appears from the pleadings that defendant Harper contends
that the sex with plaintiff was consensual. The court renders no
opinion on the issue of whether the incident was an assault by
defendant Harper or a consensual encounter between two adults.

case, plaintiff has failed to identify an express policy or decision of a person with final policymaking authority that led to a constitutional violation. Instead, plaintiff claims that the conditions and circumstances at the Warren County jail allowed defendant Harper to assault her. Specifically, plaintiff argues that defendant Williams, as Sheriff, permitted and condoned an atmosphere where sleeping on the job by detention officers was pervasive and well known and that the Sheriff and Warren County allowed safety and security devices to remain inoperative following years of inspections by the State outlining the failures.

With regard to plaintiff's claim that defendant Williams permitted and condoned an environment where napping by detention officers was pervasive, this argument fails. First of all, to establish a municipal custom as the basis for a suit under § 1983, the plaintiff must show that the practice was "so persistent and widespread" and "so permanent and well settled to constitute a 'custom or usage' with the force of law." Carter, 164 F.3d at 218 (citing Monell, 436 U.S. at 691). As discussed above, plaintiff has not shown that there was a practice of napping by detention officers that was so persistent or widespread and so permanent and well settled to constitute a custom or usage.

However, even if there was a persistent and widespread practice of napping by detention officers at the Warren County Detention Center, plaintiff has not demonstrated "a direct causal

12

link between the municipal action and the deprivation of federal rights." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997). Indeed, to establish liability on this claim, plaintiff must show "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Carter, 164 F.3d at 218 (citing Brown, 520 U.S. at 411).

As discussed above, plaintiff has not shown that a sexual assault of a female inmate was "almost bound to happen" as a result of napping by detention officers, nor can she show that the Sheriff's Office was deliberately indifferent to such a risk. Id. (citing Spell v. McDaniel, 824 F.2d 1380, 1389-91 (4th Cir. 1987)). In a case such as this, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Id. (citing Brown, 520 U.S. at 405). After viewing the evidence in the light most favorable to plaintiff, it is apparent that there is no direct causal link between any alleged inaction by the Sheriff's Office with regard to napping by detention officers and the deprivation of plaintiff's rights.

Similarly, plaintiff has not shown a causal link between her injuries and alleged security deficiencies in the Warren County

13

jail. According to plaintiff, several inspections done by the North Carolina Department of Health and Human services revealed that "some cameras/monitors need replacing/repairing," certain locks and doors needed repairing, and the control panel for the electronic surveillance equipment was not operating correctly. (Pl.'s Resp. Mot. Summ. J., at 5 [DE # 29].) Plaintiff does not contend that these specific deficiencies contributed directly to the assault by defendant Harper but rather that they created a general risk that harm could come to an inmate. Plaintiff also claims that there had been at least one other sexual assault of a female inmate and at least one prior incident of a male guard making inappropriate sexual advances towards a female inmate.

As stated by the United States Supreme Court, "[c]laims not involving an allegation that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof." Brown, 520 U.S. at 406. Defendants contend that plaintiff's assertions of security deficiencies are unsupported by the record. However, even if the alleged deficiencies were uncontested, plaintiff has failed to identify the causal link between the deficiencies and the assault by defendant Harper. As pointed out by defendants, plaintiff does not describe how any security equipment malfunctioned on the evening of the assault nor does she identify any deficiencies in existence on that date. She also does not

14

contend that a specific deficiency proximately caused the intentional assault by defendant Harper. As a result, plaintiff's allegations regarding security deficiencies do not reflect a municipal policy, custom, or usage that was maintained with deliberate indifference to plaintiff's constitutional rights.

Regarding plaintiff's claim that an inmate had previously been assaulted by a guard at the jail, this sole incident occurred several years prior to plaintiff's assault and there is no evidence that the incident was not handled appropriately by the authorities. To the contrary, the claim was investigated and the guard was either dismissed or resigned. Cf. Harris v. City of Pagedale, 821 F.2d 499 (8th Cir. 1987) (finding § 1983 liability where city officials repeatedly failed to investigate or acknowledge complaints of sexual misconduct by police officers); Robles v. City of Fort Wayne, 113 F.3d 732, 735 (7th Cir. 1997) (finding that failure to act after learning of pattern of violations would be deliberately indifferent). Although any assault of an inmate is deplorable, it is impossible for a jail to prevent every instance of harm that might come to an inmate. See Lytle v. Doyle, 326 F.3d at 473 (stating that "'isolated incidents' of unconstitutional conduct by subordinate employees" are insufficient to establish liability under § 1983 (citing Carter, 164 F.3d at 220)).

Next, plaintiff claims that defendant Warren County is liable because it failed to approve a request from the Sheriff's Office

15

for funding for an additional night-shift jailer. Despite this claim, there is no evidence to demonstrate that the jail was understaffed on the day of the alleged assault. Indeed, there were three jailers, including defendant Harper, on duty on the night of the incident, and the evidence does not indicate that this was inadequate. Based on the foregoing, plaintiff has not demonstrated that defendant Warren County acted with deliberate indifference to her constitutional rights.[4] Therefore, summary judgment is GRANTED as to plaintiff's claims against defendant Warren County and her official capacity claims against defendants Williams and Harper.

---

[4]To the extent plaintiff's complaint could be construed as raising a failure to train claim, this claim also fails. In <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378 (1989), the Supreme Court described limited circumstances under which a municipality may be held liable for failure to train. The failure to train must reflect "a 'deliberate or conscious' choice by a municipality" and must demonstrate a "deliberate indifference" to the rights of the plaintiff. <u>Id.</u> at 389. The Court cautioned that such liability would be found in narrow circumstances only. The circumstances of this case do not warrant a finding that any alleged failure to train defendant Harper rises to the level of deliberate indifference or was the moving force behind plaintiff's constitutional injury. <u>See</u> <u>Lytle v. Doyle</u>, 326 F.3d 463, 473 (4th Cir. 2003) (stating that "[s]ection 1983 liability may attach if officers are not adequately trained 'in relation to the tasks the particular officers must perform,' and this deficiency is 'closely related to the ultimate injury'" (quoting <u>Canton</u>, 326 F.3d at 390-91)); <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1077 (8th Cir. 1996) (finding no "patently obvious need for the city to specifically train officers not to rape young women"); <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1308 (10th Cir. 1998) (concluding that sexual assault of an inmate is not "a plainly obvious consequence of a deficient training program).

16

3)    Liability of Warren County Sheriff's Department

The Fourth Circuit has established that the Office of Sheriff is not a cognizable, legal entity separate from the county government and sheriff in his official capacity. Therefore, defendant Warren County Sheriff's Department is not liable as a separate entity in this matter. Revene v. Charles County Comm'rs, 882 F.2d 870, 874 (4th Cir. 1989).

B.    Equal Protection Claim

In her response to defendants' motion for summary judgment, plaintiff states that defendants also violated her right to equal protection under the Fourteenth Amendment of the United States Constitution. Specifically, plaintiff claims that her rights were violated because the security at the Warren County Detention Center affords male prisoners greater protection than the female prisoners.

To demonstrate a violation of her equal protection rights, plaintiff must show: (1) that she was treated differently than similarly situated individuals, and (2) that this treatment was done intentionally or purposefully. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In this case, there is no evidence that any alleged security deficiencies within the female section of the detention center were the result of intentional or purposeful discrimination. Consequently, this claim is DENIED.

17

C.    State Law Claims

Plaintiff asserts the following claims under North Carolina state law: negligent infliction of emotional distress, assault and battery, willful and wanton negligence, and statutory claims under North Carolina General Statutes §§ 153A-224 and 162-55. Defendants have raised the affirmative defense of sovereign or governmental immunity as to the claims against them in their official capacity and the defense of public officer's immunity for the claims against defendant Williams in his individual capacity.

1)    Sovereign Immunity

North Carolina law provides for the application of the doctrines of sovereign and governmental immunity to the state, its counties, and their public officials in their official capacity. Phillips v. Gray, 163 N.C. App. 52, 55 (2004). This doctrine provides for absolute immunity from actions against public officials sued in their official capacities regarding the performance of a governmental function. Id. It is well established that law enforcement is a governmental function subject to such immunity. Clayton v. Branson, 153 N.C. App. 488, 493 (2002). Under the doctrine of sovereign immunity, the state and its agencies are immune from suit absent a waiver of immunity. Meyer v. Walls, 347 N.C. 97, 104 (1997). This doctrine is substantially applied to a county and its agencies, absent a waiver, under the rubric of "governmental immunity." Craig ex rel.

18

<u>Craig v. New Hanover Bd. Of Educ.</u>, 363 N.C. 334, 335 (2009); <u>Meyer</u>, 347 N.C. at 104.

Such immunity may be waived, however, through the purchase of an insurance policy. <u>Sattore v. New Hanover County Bd. of Comm'rs</u>, 165 N.C. App. 173, 176 (2004). The North Carolina legislature has established two ways that a sheriff can be sued in his/her official capacity, thereby waiving sovereign or governmental immunity. First, under North Carolina General Statute § 58-76-5, a plaintiff may sue a sheriff and the surety on his official bond for acts of negligence in the performance of official duties. North Carolina law requires all sheriffs to purchase a bond not to exceed $25,000.00. Second, under North Carolina General Statute § 153A-435, a county may purchase liability insurance for negligence caused by an act or omission of the county or any of its officers or agents when performing governmental functions. The statute expressly states that "[p]urchase of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function." Thus, "[a] governmental entity does not waive [its] immunity if the action brought against [it] is excluded from coverage under [the] insurance policy." <u>Patrick v. Wake County Dep't of Human Servs.</u>, 188 N.C. App. 592, 596 (2008); <u>see</u>, <u>e.g.</u>, <u>Craig</u>, 363 N.C. at 336 ("[B]ecause the [insurance] policy does not cover plaintiff's negligence claim,

19

both statute and longstanding case law of this State establish that the Board has not waived immunity from suit.").

Defendants argue that defendant Warren County's Sheriff's Office has not waived its immunity, despite its purchase of liability insurance. They argue that the language of the policy specifically excludes any claims for which the covered person is protected by governmental immunity.

In order to determine whether coverage exists in this situation, it is necessary to follow "the traditional rules of contract construction." <u>Dawes v. Nash County</u>, 357 N.C. 442, 448 (2003). Prior to the date of the incident, the Sheriff of Warren County had purchased an insurance policy from the North Carolina Association of County Commissioners Liability and Property Pool ("the NCACC policy"). Section VI of the NCAAC policy, "Law Enforcement Liability Coverage" states, in part:

> The Pool will pay on behalf of the Covered Person all sums which the Covered Person shall become legally obligated to pay as money damages because of an Occurrence which results in personal injury, bodily injury, or property damage and occurring while a Covered Person is acting within the course and scope of the Covered Person's duties to provide law enforcement.

> . . .

> The Pool will pay damages for Personal Injury and/or Bodily Injury as a result of an Occurrence arising from sexual abuse, sexual molestation, sexual exploitation or sexual injury, which alleges that the Covered Person was negligent in hiring, training, or supervision.

20

(Decl. Linda Worth [DE # 27], Att. 25 at 13.) This section further provides:

> The parties to this Contract intend for no coverage to exist under Section VI (Law Enforcement Liability Coverage) as to any claim for which the Covered Person is protected by sovereign immunity and/or governmental immunity under North Carolina law. It is the express intention of the parties to this Contract that none of the coverage set out herein be construed as waiving in any respect the entitlement of the Covered Person to sovereign immunity and/or governmental immunity.

(Id. at 14.)

The exclusions sub-section (Section F) states, in part, that Section VI (Law Enforcement Liability Coverage) of the contract does not apply to: "(1) any claim, demand, or cause of action against any Covered Person as to which the Covered Person is entitled to sovereign or governmental immunity under North Carolina law." (Id. at 16.)

Defendants argue that these provisions specifically preserve governmental immunity for all claims to which such immunity applies. Plaintiff, however, contends that any exclusionary language contained in the insurance policy does not preserve immunity in light of the general statute enacted in order to create a waiver of immunity through the purchase of liability insurance.

In support of their position, defendants cite Frink v. Batten, 197 N.C. App. 231, 2009 WL 1383222 (unpublished) (May 19, 2009), an unpublished North Carolina Court of Appeals case. In Frink, the Court of Appeals found that nearly identical language in an

21

insurance policy preserved governmental immunity for the sheriff and jail administrator. Defendants also cite <u>Patrick v. Wake County Department of Human Resources</u>, 188 N.C. App. 582, 596-97 (2008) (finding that immunity was preserved where language in policy expressly preserved immunity) and <u>Magana v. Charlotte-Mecklenburn Board of Education</u>, 183 N.C. App. 146, 148-49 (2007) (finding that immunity was preserved in policy that stated that "it was not intended by the insured to waive its governmental immunity as allowed by [statute]").

In support of her position that sovereign immunity is not preserved, plaintiff discusses <u>Myers v. Bryant</u>, 188 N.C. App. 585 (2008). She states that in <u>Myers</u>, a published case, the court determined that "[w]here a sheriff is covered by his county's liability insurance purchased pursuant to section 153A-435(a) and his official bond, the county's liability insurance 'serves to complement the purpose of the bond statute, insuring an adequate remedy for wrongs done to the plaintiff if . . . the bond does not provide an adequate remedy.'" <u>Id.</u> at 588. To the extent that plaintiff is arguing that the exclusion does not apply because defendants' purchase of the bond waives immunity, this argument fails. Indeed, the defendants' purchase of a $25,000.00 bond does waive immunity for damages but only up to the amount of the bond. <u>Russ v. Causey</u>, 732 F. Supp. 2d 589, 611 (E.D.N.C. Aug. 5, 2010). "Any effective waiver of immunity through the insurance policy

22

would have to be in addition to and separate from the waiver of the bond." Id. The Policy at issue here retains the Sheriff's immunity from liability as to any amounts above the $25,000.00 official bond. Defendants are therefore immune from suit against them in their official capacities for damages in excess of the $25,000.00 surety bond.

     2) Public Officer's Immunity

As an affirmative defense to the state law negligence claims against defendant Williams in his individual capacity, defendant Williams cites the doctrine of public officer's immunity. This doctrine states that "[p]ublic officials cannot be held individually liable for damages caused by mere negligence in the performance of their governmental or discretionary duties." Meyer v. Walls, 347 N.C. 97, 112 (1997). In order to establish liability, plaintiff "must allege and forecast evidence demonstrating the officers acted maliciously, corruptly, or beyond the scope of duty." Prior v. Pruett, 143 N.C. App. 612, 623 (2001). Plaintiff must also overcome the presumption that the public officer performed his duties "fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." In re Annexation Ordinance No. 300-X, 304 N.C. 549, 551 (1981). Absent a showing of malice, the defendant will be entitled to public officer's immunity.

Plaintiff has failed to put forth sufficient evidence that defendant Williams acted maliciously, corruptly, or beyond the scope of duty. Even if defendant Williams was negligent, which does not appear to be the case, a showing of negligence is insufficient to overcome the public officer's immunity. Therefore, Summary judgment is GRANTED on plaintiff's negligence claims against defendant Williams in his individual capacity.

> 3) Injury to Prisoner by Jailer under N.C. Gen. Stat. § 162-55

Plaintiff also alleges a claim for injury to a prisoner under North Carolina General Statute § 162-55. Under that statute plaintiff is entitled to treble damages "for conduct by prison officials 'intended by the jailers' to cause harm to them or where the jailor was criminally negligent." Layman ex rel. Layman v. Alexander, 343 F. Supp. 2d. 483 (W.D.N.C. 2004). Plaintiff's allegations in this case state a claim against defendant Harper under § 162-55.

Although respondeat superior is applicable under that statute, North Carolina does not recognize a respondeat superior claim where the employee's actions were outside the scope of employment and were not done in furtherance of the employer's business unless the acts were ratified by the employer. Medlin v. Bass, 327 N.C. 587, 593 (1990). In this case, it is unquestionable that defendant Harper's actions were neither within the scope of his employment

24

nor ratified by the Sheriff or County.  Accordingly, the motion for summary judgment as to this claim is GRANTED.

4)    Assault and Battery

A plaintiff is entitled to recover damages in a civil action for assault and battery "against one who, for the accomplishment of a legitimate purpose, such as justifiable arrest, uses force which is excessive under the given circumstances." Thomas v. Sellers, 142 N.C. App. 310, 315 (2001).  A suit against an officer in his official capacity is essentially a suit against the government entity of which the officer is an agent. Kentucky, 473 U.S. at 165-66.    Therefore, plaintiff cannot succeed on an official capacity assault and battery claim against defendant Harper because under North Carolina law an employer is not vicariously liable for the intentional criminal acts of employees.  See also Medlin v. Bass, 327 N.C. at 591.  Thus, the motion for summary judgment on the official capacity assault and battery claim against defendant Harper is GRANTED.[5]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED on plaintiff's claims against defendant Warren County, defendant Warren County Sheriff's Department, defendant Williams in his official and individual capacity, and  defendant

---

[5]Defendant Harper has not moved for summary judgment on claims against him in his individual capacity.

Harper in his official capacity.  Remaining before the court are plaintiff's claims against defendant Harper individually.  The clerk is directed to continue management of this case.

This 22th day of March 2011.

MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
HBB